**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfonso Raymond Salazar, | No. CV-96-00085-TUC-FRZ |
| Petitioner, | DEATH-PENALTY CASE |
| v. | ORDER |
| Charles Ryan, et al., | |
| Respondents. | |

In preparation for the scheduled evidentiary hearing, Respondents arranged a mental health evaluation of Petitioner to be conducted on March 6, 2017, by Dr. James Youngjohn. In response to notice of the evaluation Petitioner filed several motions: to allow Petitioner's counsel to observe the evaluation (Doc. 248), to prevent any questioning during the evaluation regarding the crime (Doc. 247), and to disclose and limit the scope of the testing to be performed (Doc. 246).

After expedited briefing was completed, Respondents notified the Court that Dr. James Youngjohn had withdrawn from the case, and stated this mooted Petitioner's motions. (Doc. 253.) Respondents, however, had previously argued the motions were untimely because Petitioner knew of Respondents' general intention to retain a rebuttal expert yet waited until a named expert had scheduled an evaluation before filing objections, necessitating litigation over Petitioner's limitations in the week before the evaluation. (*See* Doc. 252 at 2.) Because Petitioner's motions are not materially

dependent on specific objections to Dr. Youngjohn,[1] the Court does not find them moot, and will issue rulings on the motions to avoid repetition of rushed briefing and last-minute rulings when Respondents schedule a new evaluation.

Accordingly, having reviewed the papers and arguments, the Court denies the motions to disclose and limit the scope of testing, and to prevent any questioning regarding the crime, and denies Petitioner's request to allow counsel to observe the examination in-person.

<u>Motion for Disclosure of Testing to Be Administered by Governments Mental Health Expert (Doc. 246)</u>

Petitioner has asserted that his counsel was constitutionally ineffective for not presenting mitigation evidence of Petitioner's developmental and cognitive impairment at sentencing. (*See* Doc. 222.) Assuming, *arguendo*, that counsel was deficient in this regard, the Court must assess the resulting prejudice, which includes considering evidence the government would have proffered in rebuttal at sentencing. *See, e.g.*, *Wong v. Belmontes*, 558 U.S. 15, 26 (2009) (per curiam). Petitioner claims the government must disclose the specific tests the expert plans on using during the mental health evaluation so Petitioner can determine if the proposed testing is relevant rebuttal to his proposed mitigation, to determine whether Petitioner needs to mount any *Daubert*[2] challenges to the proposed testing, and because there is a danger of the skewering of scores due to the practice effect. Respondents contend that prejudice must be assessed under Arizona law, which would not have required the State's rebuttal evidence to be directly related to the mitigation proffered by the defense and that relevant to determining whether Petitioner suffers from a neuropsychological impairment is whether another condition, such as a personality disorder, better explains Petitioner's behavior. *See Estelle v. Smith*, 451 U.S.

---

[1] The Court is aware that Petitioner's motion to allow observation of the evaluation is in small part based on an allegation that Dr. Youngjohn has a history of finding malingering in his subjects. (*See* Doc. 248 at 3.) This personal observation of Dr. Youngjohn, however, is not a factor in this Court's ruling.

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

1 454, 465 (1981) (state's expert evaluation often may be the "only effective means" of
2 rebutting the defense evidence). Further, Respondents assert that disclosure of the tests to
3 Petitioner before the evaluation can undermine the legitimacy of the evaluation. (Doc.
4 252 at pg. 3) (also explaining that "test selection for mental health evaluations is a
5 dynamic process, and an expert's selection of specific tests to administer depends in part
6 on how the test subject performs on prior tests").

       The Court agrees with Respondents. Under Arizona law, the State would have
8 been permitted to present its own expert's evaluation of Petitioner's mental condition in
9 response to the assertion that Petitioner's alleged neuropsychological impairment
10 mitigated his sentence. *See* A.R.S. § 13-752(G) (providing that the State "may present
11 any evidence that demonstrates that the defendant should not be shown leniency
12 including any evidence regarding the defendant's character, propensities, criminal record
13 or other acts"). The federal criminal cases cited by Petitioner are inapposite. Accordingly,
14 the Court declines to order Respondents to disclose specific tests the expert plans on
15 using during the mental health evaluation for the purpose of allowing Petitioner to raise
16 objections to the relevancy, adequacy, or admissibility of the proposed testing, or to limit
17 the evaluation in scope to testing designed to confirm or refute the diagnoses of
18 Petitioner's expert. Any arguments regarding the admissibility of the expert's findings
19 under *Daubert* or concerning the alleged unreliability of the personality tests ultimately
20 utilized by Respondents' expert or the skewering effects of scores due to the practice
21 effect of repeated testing should be raised after the evaluation and disclosure of the
22 expert's report. The Court will not rule on evidence not yet in existence or sought to be
23 admitted; judges are presumed to consider only evidence found to be properly admissible.
24 *See Walton v. Arizona*, 497 U.S. 639, 653 (1990) ("[t]rial judges are presumed to know
25 the law and to apply it in making their decision."), *overturned on other grounds by Ring
26 v. Arizona*, 536 U.S. 584 (2002)).
27 //
28 //

<u>Motion to Prevent Mental Health Expert from Questioning Petitioner Regarding the Crime (Doc. 247)</u>

Petitioner requests that the Court preclude Respondents' expert from questioning Petitioner about the facts of the crime to protect Petitioner's Fifth Amendment privilege against self-incrimination and Petitioner's Sixth Amendment and statutory right to counsel. Petitioner asserts that any inquiry into the facts of the crime is irrelevant and beyond the scope of the mitigation that will be put forth.

For the reasons already discussed, the Court declines to limit the scope of Respondents' expert's examination. Additionally, once Petitioner raised his mental condition as an issue in these proceedings, he necessarily waived his Fifth Amendment privilege. *See Lambright v. Ryan*, 698 F.3d 808, 823 (9th Cir. 2012) (observing that a habeas petitioner must waive the Fifth Amendment privilege to litigate a claim that puts mental health at issue); *see also Estelle*, 451 U.S. at 465, 468, 469 n.13 (limiting its application of Fifth Amendment protections to state psychiatric evaluations conducted in the absence of a defendant initiating a psychiatric exam or relying on psychiatric evidence); *Buchanan v. Kentucky*, 483 U.S. 402, 423-24 (1987) (holding that the Fifth Amendment is not implicated by the State's introduction of psychological evidence to rebut a defense supported by psychological evidence).

Also, to the extent Petitioner asserts such a waiver is limited in scope, the Court's previous entry of a protective order ensures sufficient coverage of Petitioner's privilege. Pursuant to stipulation, the Court's order limits the use of "any statements Petitioner has or will provide to mental health or medical experts, and the expert findings reliant or based on those statements" to these proceedings, and prohibiting their disclosure or use in any other proceedings, including Petitioner's resentencing should relief be granted in this case. (Doc. 232.) Finally, although Petitioner's motion also purports to rely upon Petitioner's "statutory right to federal habeas counsel, and the Sixth Amendment right to counsel," he proffers no legal reasoning for the Court to rule on this basis. (*See generally*, Doc. 247.) Accordingly, the Court denies Petitioner's motion to preclude Respondents'

expert from questioning Petitioner about the facts of the crime.

### Motion to Allow Observation by Petitioner's Counsel of State's Mental Health Evaluation (Doc. 248)

Petitioner requests the opportunity to observe the evaluation in order to protect Petitioner's Fifth and Sixth Amendment rights, as well as his statutory right to federal habeas counsel. Alternatively, Petitioner requests that the evaluation be videotaped with the understanding that the videotape is not to be disclosed to the prosecution unless and until the defense decides to introduce the videotape as evidence. Respondents contend that the motion should be denied because the presence of non-testing personnel compromises the integrity of the examination and renders the results unreliable. Respondents do not oppose Petitioner's alternative request to record the evaluation, but do oppose Petitioner's request for sole access to the recording.

For the reasons already discussed, the presence of counsel during the expert's mental health evaluation is not necessary to protect Petitioner's Fifth Amendment rights. Further, Petitioner has not explained how counsel's presence during the evaluation is necessary to protect the right to counsel. This is a collateral proceeding not a re-sentencing and he has no constitutional entitlement to counsel. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Petitioner may consult with counsel prior to the examinations, but he would not be entitled to the presence of his counsel during the examinations even if he did have a Sixth Amendment right to counsel. *See United States v. Mattson*, 469 F.2d 1234, 1236 (9th Cir. 1972); *cf. Estelle*, 451 U.S. 470 n.14 (noting that appellate court did not find a constitutional right to counsel during an examination). Effective confrontation of Respondents' experts is ensured by the opportunity to depose them prior to, and cross-examine them during, the evidentiary hearing, and to put on evidence in rebuttal.

Finally, Petitioner has not explained how observation by counsel would prevent Dr. Youngjohn — or any mental health evaluator — from finding Petitioner was "malingering". To the extent counsel feels this expert, or any other, is predisposed to a

determination of "malingering", that issue can be adequately addressed on cross-examination. Accordingly, the Court will not order that Petitioner's counsel be allowed to be present during the evaluation, or to view the evaluation on a live feed, but if Respondents conclude that counsel's presence or observation via live feed would not be disruptive and consent to Petitioner's counsel's presence during any portion of the contact visits, counsel may be present in an observation capacity within the parameters of any such consent.

Finally, the Court is aware of no legal authority which either prohibits or requires the use of recording devices during a mental health examination, and thus, this determination is within the Court's sound discretion. The Court denies Petitioner's request to videotape Respondent's expert's evaluation. If, however, Respondents conclude that recording the evaluation would not be disruptive and record the evaluation, a copy of the recording shall be disclosed to Petitioner. In the event the evaluation is recorded, Petitioner asserts that the recording should only be obtained by the prosecution if the defense intends to offer the recording as evidence. The Court disagrees. In criminal trials, the prosecution is required to be insulated from exposure to the results of their own expert's mental health examination because of and concerns over the possibility of improper derivative use of evidence in order to safeguard the defendant's privilege against self-incrimination. *See* Fed. R. Crim. Proc. 12.2(c) advisory committee notes (stating that most courts that have addressed the issue of sealing or insulating the results of the examination until it is clear the defendant will introduce expert evidence at a capital sentencing hearing have recognized that if the government obtains early access to the accused's statements, it will be required to show that is has not made any derivative use of that evidence, consuming time and resources); *citing United States v. Hall*, 152 F.3d 381, 398 (5th Cir. 1998) (noting that sealing of record, although not constitutionally required, "likely advances interests of judicial economy by avoiding litigation over [derivative use issue]") *abrogated on other grounds by United States v. Martinez-Salazar*, 528 U.S. 304 (2000). For the reasons stated above, the Court finds it

unnecessary to firewall the prosecution from the results of their own expert's evaluation in this habeas proceeding. Moreover, Petitioner has already placed his mental condition in issue by introducing evidence from his own mental health experts and by noticing his intent to rely upon this evidence to establish Petitioner's entitlement to relief in these proceedings.

In conclusion, having reviewed the papers and arguments, the Court denies the motions to disclose and limit the scope of testing, and to prevent any questioning regarding the crime, and denies Petitioner's request to permit counsel to observe the examination in-person or obtain an exclusive recording of the examination, but will permit the observation or recording of the examination with Respondents' consent.

Accordingly,

**IT IS ORDERED** that Petitioner's Motion for Disclosure (Doc. 246) is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion to Limit the Scope of the Expert Evaluation (Doc. 247) is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion to Observe/Record the Evaluation (Doc. 248) is **DENIED.** If Respondents conclude that counsel's presence or observation via live feed would not be disruptive and consent to Petitioner's counsel's presence, counsel may be present in an observation capacity only within the parameters of any such consent. If Respondents conclude that recording the evaluation would not be disruptive and record the evaluation, a copy of the recording shall be disclosed to Petitioner.

Dated this 13th day of March, 2017.

　　　　　　　　　　　　　　　　　　　　　　Honorable Frank R. Zapata
　　　　　　　　　　　　　　　　　　　　　　Senior United States District Judge