**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfonso Raymond Salazar, | No. CV-96-00085-TUC-FRZ |
| Petitioner, | <u>DEATH-PENALTY CASE</u> |
| v. | **ORDER** |
| Charles Ryan, et al., | |
| Respondents. | |

Pending before the Court is Respondents' motion, pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases, requesting that the Court order Petitioner to disclose the notes taken by Dr. Puente, along with copies of any memoranda in Dr. Puente's file in this matter, and a list of persons with whom Dr. Puente may have communicated that are not identified in his report, correspondence, or notes. (Doc. 266.) The matter has been fully briefed. (Docs. 272, 274.).

<u>Motion for Disclosure</u>

This Court has granted an evidentiary hearing to address Petitioner's allegations of ineffective representation by state post-conviction counsel as cause for the procedural default of two claims of ineffective assistance of trial counsel. At issue is whether trial counsel was ineffective in failing to investigate Petitioner's social background and present that information to mental health experts. The Court has authorized the deposition of Petitioner's mental health expert in these proceedings, Dr. Antonio Puente, which has been scheduled for June 29, 2017. Petitioner states that his counsel is not in possession of

any of the requested documents, and the only documents Dr. Puente indicates he possesses that are responsive to Respondents' disclosure request are notes from witness interviews he conducted. Respondents assert that Dr. Puente's interview notes are necessary to determine how the information obtained in interviews of witnesses affected the development of his opinions. Additionally, Respondents assert the interview notes may contain relevant impeachment material. Petitioner contends Respondents are not entitled to these interview notes because they are protected as a form of a draft report under Federal Rule of Civil Procedure, Rule 26(b)(4)(B).

Rule 26(b)(4)(B): Trial-Preparation Protection for Draft Reports or Disclosures

A party must disclose the identity and the written report of an expert whose testimony may be used at trial. *See* Fed.R.Civ.P. 26(a)(2)(A)–(B). Among other things, the report must contain the expert's opinions and the facts or data the expert considered in forming the opinions. *Republic of Ecuador v. Mackay*, 742 F.3d 860, 865–66 (9th Cir. 2014); Fed.R.Civ.P. 26(a)(2)(B)(i)-(ii). Exempt from this requirement, however, are the "drafts of any report or disclosure . . . regardless of the form in which the draft is recorded." Fed.R.Civ.P. 26(b)(4)(B). Petitioner asserts this exemption protects Dr. Puente's interview notes, as a form of a draft report, from discovery.

Petitioner contends that the language added in the 2010 amendments to Rule 26 to protect "any form of a draft report" was intended to narrow the scope of expert discovery, and that the rule never envisioned production of "every single witness interview note taken by Dr. Puente." (Doc. 272 at 2) (citing *Sara Lee Corp v. Kraft Foods Inc.*, 273 F.R.D. 416, 418 (N.D. Ill. 2011)). It is an oversimplification, however, to attempt to describe the 2010 amendments as simply "broadening" or "narrowing" the scope of expert discovery without further elucidation. As explained below, the 2010 amendments to Rule 26 were more of a refinement—expanding the protection afforded to discovery into attorney-expert communications, but limiting claims of privilege into the discovery of factual material considered by the expert—with the overall intent to provide greater protection for the theories and mental impressions of counsel.

The definition of what constitutes a "draft report" is not evident from the rule itself, and there is little published authority on what is protected from disclosure. *See, e.g.*, *In re National Hockey League Players' Concussion Injury Litigation*, 2017 WL 684444, at *1 (D. Minn. Feb. 21, 2017) (compiling cases discussing poverty of relevant caselaw). Thus, the Court finds it helpful, in establishing the contours of the rule, to examine its historical context and purpose. In *Mackay*, the Ninth Circuit Court of Appeals—"substantially aided by the Advisory Committee's notes"—reviewed and summarized the historical context of Rule 26(b). 742 F.3d at 866. The Court of Appeals explained that early amendments to the rule were intended to allow an adverse party to prepare for effective cross-examination and rebuttal by narrowing issues and eliminating surprise, *id.* at 868 (citing Wright et al., *Federal Practice and Procedure* § 2032 (3d ed. 2013)), and were also meant to reject the decisions which sought to bring expert information within the protections of the work-product doctrine, *id.* at 868 (citing Fed.R.Civ.P. 26(b)(4) advisory committee's notes (1970 amendment)). In 1993, provisions were added requiring most testifying experts to prepare reports, and requiring disclosure of "data or other information" considered by the expert in forming the opinions. *Id.* at 868–69. Because "other information" was then interpreted broadly by many courts to include disclosure of all information provided to testifying experts, including communications between counsel and expert witnesses as well as all draft reports, the rule was again amended in 2010. *Id.* at 869. Disclosure obligations were extended to any "facts or data considered" by the expert in forming the opinions to be expressed, and work-product protections were provided "against discovery regarding draft expert disclosures or reports." Fed.R.Civ.P. 26(b)(2)(B)(ii)(2010); Fed.R.Civ.P. 26 advisory committee's notes (2010 amendments). This was meant to "limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel," while at the same time broadly interpreting "facts or data" to "require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Fed.R.Civ.P. 26 advisory committee's notes (2010 amendments). Thus, the

amendments to Rule 26(b)(4) "restore[] the core understanding that the work-product doctrine solely protects the inner workings of an attorney's mind." *In re Application of Republic of Ecuador*, 735 F.3d 1179, 1187 (10th Cir. 2013). Rule 26(b)(4)(B) protects draft reports because "the drafting process ordinarily entails communications between the expert and counsel" and disclosing draft reports "is likely to include revelation of attorney work product." *Wenk v. O'Rielly*, 2014 WL 1121920, at *4 (S.D. Ohio Mar. 20, 2014).

When it comes to applying the rule, there is little case law to help the Court "distinguish between notes which are simply a compilation of information for possible later use in a case, and notes which truly are part of the draft of a final expert report." *See id.* at *5. In the absence of a "bright-line standard," courts attempting to determine if material is protected as a draft report have applied a fact-dependent inquiry. *See, e.g., id.* (observing that in the absence of a bright-line standard, and "since most cases will turn on their facts . . . this appears to be a fact-dependent issue."). In conducting this inquiry, whether or not the documents at issue are labeled "draft report" or "witness interview notes" or something else entirely is irrelevant. *See Deangelis v. Corzine*, 2016 WL 93862, at *3 n.5 (S.D.N.Y. Jan. 7, 2016) ("It is the substance of the document and the circumstances of its creation, not its label, that dictate whether it is, in fact, a draft."). Additionally, whether the documents are a draft of an entire report rather than a portion thereof is also an irrelevant distinction. *Id.* at *4 (citing *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 512 (N.D. Cal. 2012)). Factors that may be relevant in determining whether the documents are a draft report include whether the documents were created for the purpose of being included in in the final report, and whether they were actually included in earlier versions of the report. *See e.g., Deangelis*, 2016 WL 93862, at *3-4.

In *Deangelis*, the court found that documents comprised of a summary of events that had occurred at a previous trial and a chart, both of which had been prepared by a non-testifying consultant and provided to a testifying expert, were protected under the

Rule 26(b)(4)(B) "draft report" exemption. *Id.* at *5. The court considered it particularly relevant to the analysis that the documents had in fact been created for use in the expert's report, and that the expert anticipated that the documents would form a part of the report he was drafting, even though it may not have been incorporated into the final report. *Id.* at *1, *5.

Applying similar reasoning in *Davita Healthcare Partners, Inc. v. United States*, the court found that Rule 26(b)(4)(B)'s work-product privilege protected spreadsheets, graphs, presentations, and charts under Rule 26(b)(4)(B), "so long as the documents were prepared by the testifying expert to be included in draft expert reports." 128 Fed. Cl. 584, 588, 592 (Fed. Cl. 2016).

Finally, consistent with the purpose of the rule, the court in *United States v. Veolia Env't N. Am. Operations, Inc.*, found that draft presentations that contain "summaries and conclusions" reflecting "counsel's collaborative interactions with expert consultants" are protected as a form of "draft report" under Rule 26(b)(4)(B). 2014 Wl 5511398, at *5 (D.Del. Oct 31, 2014).

With these considerations in mind the Court turns to Petitioner's contention that Dr. Puente's witness interview notes are a "form" of the expert's "draft report." The burden of proving any evidentiary privilege rests with the party asserting it. *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). Petitioner asserts that Dr. Puente's office has informed Petitioner's counsel that the reason he takes witness interview notes is for incorporation into the report, and as such, Petitioner asserts they are properly shielded by Rule 26(b)(4)(B). The Court finds that Petitioner has not, at this time, satisfied his burden of proving these notes are privileged. It cannot be that "everything an expert writes down, no matter when in the opinion-forming process that occurs, and no matter what the reason" qualifies as a "draft." *Wenk*, 2014 WL 1121920, at *6.

The Court has reviewed Dr. Puente's supplemental report, focusing on the sections titled "General History" and "Collateral Information," in which he conveys "information"

about Petitioner's family and social background. (Doc. 262, Attachment A at 3–5.) The Court concludes that at least some of the *information* obtained from Dr. Puente's witness interviews, and memorialized in his notes, was most likely gathered by Dr. Puente for the purpose of inclusion in his expert report. *See Davita*, 128 Fed.Cl. at 592. As Respondents assert, however, in this sense, Dr. Puente's contemporaneous notes are no different from raw data generated during testing, and would thus be discoverable as a means of providing the basis of Dr. Puente's opinion. The Court tends to agree, especially in light of the rule's historical context and purpose. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1194–95 (11th Cir. 2013) (explaining that the 2010 amendments to the rule do not "suggest the drafters' intent to confer work-product status on the notes of a testifying expert"). At a minimum, to the extent the notes are mere records of the witnesses' direct statements, and do not incorporate Dr. Puente's analysis, opinions or commentary on those statements, they would seem to be unprotected from disclosure as "mere recitation[s] of facts and data." *See Davita*, 128 Fed.Cl. at 591 (distinguishing unprotected "facts and data" as separate and distinct from interpretations of data that reflect counsel's mental impressions and result from the expert's and counsel's collaborative efforts to organize, marshal, and present data). However, in the absence of a bright-line standard, this Court finds, as did the court in *Deangelis*, that this dispute touches on "the rule's fuzzy edges." *Deangelis*, 2016 WL 93862, at *1. Mindful that this inquiry is highly fact-dependent, the Court will review Dr. Puente's witness interview notes *in camera* before issuing a final decision.

Accordingly,

**IT IS ORDERED** Petitioner shall submit the witness interview notes in dispute to the Court, ex parte and under seal for *in camera* review, no later than June 23, 2017.

**IT IS FURTHER ORDERED** Petitioner shall submit to the Court, ex parte and under seal for *in camera* review, any drafts of the supplemental report, and any additional argument they wish to make about the question of whether the witness interview notes are a "draft report" under Rule 26(b)(4)(B).

1    Dated this 19th day of June, 2017.

                                                    _____
                                                       Honorable Frank R. Zapata
                                                     Senior United States District Judge